**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
AT LONDON**

**CIVIL ACTION NO. 12-221-DLB**

**GLENNA BARGO and VICKI TUGGLE**                                         **PLAINTIFFS**

**vs.**                 **MEMORANDUM OPINION AND ORDER**

**GOODWILL INDUSTRIES OF KENTUCKY, INC, et al.**       **DEFENDANTS**

\*\*\*    \*\*\*    \*\*\*    \*\*\*

Plaintiffs bring this age and gender discrimination action against their former employer, Goodwill of Kentucky, Inc., under Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act of 1967 ("ADEA), and the Kentucky Civil Rights Act, along with state-law claims against Goodwill and its employees for intentional infliction of emotional distress, defamation and invasion of privacy against Goodwill and its employees.

The Defendants have moved to dismiss all claims brought by Plaintiff Glenna Bargo, and certain claims brought by Plaintiff Vicki Tuggle (Doc. # 3). More specifically, Defendants move to dismiss Plaintiff Tuggle's claim under Title VII, as well as her intentional infliction of emotion distress, defamation and invasion of privacy claims. Plaintiffs have responded in opposition (Doc. # 4), and Defendants have replied (Doc. # 5); thus, this motion is ripe for review. For the reasons stated herein, the Court will **grant** Defendants' motion to dismiss.

1

## I. FACTUAL BACKGROUND

Because this matter is before the Court on a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the following facts are taken from Plaintiffs' Complaint and accepted as true:

### A. Plaintiff Glenna Bargo

Plaintiff Bargo, who was at least forty (40) years old at all times relevant to this suit, was employed by Defendant Goodwill Industries, Inc. ("Goodwill") from November 1999 through September 2011. During that period, Bargo consistently received good performance evaluations. Her last position with the company was as Store Manger of the Harlan, Kentucky store.

Bargo alleges that Defendant Kristel Fryman was promoted to Vice President of Goodwill some time between October 2010 and September 2011. Shortly after her promotion, Fryman began relieving Bargo of her job duties and forcing her to work longer hours. Finally, on September 30, 2011, Fryman terminated Bargo, allegedly because of poor performance and decreased sales.

Bargo asserts that Fryman's explanation for her termination was "merely a mask to cover-up the pattern of age discrimination throughout Goodwill's Cumberland division." (Doc. # 1 at ¶ 20). Bargo goes on to allege that Fryman's explanations were inconsistent with the objective evidence: her performance evaluations were consistently positive and, although sales had dropped from October 2010 through June 2011, sales receipts reflected that sales had increased in July, August and September 2011.

### B. Plaintiff Vicki Tuggle

Plaintiff Tuggle was employed by Goodwill as a Store Manger since September 6,

1994. At all times relevant to this suit, Tuggle was in her mid-to-late sixties. In early 2011, Defendant Vicky Hunter began reprimanding Tuggle about customer complaints and taking excessively long lunch breaks. Tuggle asserts that there were no such customer complaints, nor was Hunter ever able to produce specific information about the complaints.

At some time in early 2011, Goodwill solicited applications for a Donated Goods Manager. Tuggle applied for the positions, as did Mr. David Schultz, a younger male who had been with the company for less than a year. Schultz was ultimately given the position despite Goodwill's longstanding history of promoting veteran employees, particularly those with Store Manager experience. As the Donated Goods Manager, Schultz began reprimanding Tuggle about being rude to customers and taking long lunch breaks. Tuggle contends these allegations were false.

Between March 2011 and July 27, 2011, Tuggle went on medical leave due to an unspecified medical condition. When Tuggle returned from medical leave, Schultz demoted her from the Store Manager position and took away many of her job responsibilities. Schultz also scheduled Tuggle for less favorable shifts working in the "back of the store," (*Id.* at ¶ 26) which required her to be on her feet, lift, and do manual labor above her head. These new job tasks were in violation of Tuggle's medical restrictions, she claims.

Because she was unable to perform her new job tasks, Tuggle again took medical leave from August 16, 2011 through September 22, 2011. During her leave, she made complaints to Defendant Roland Blahnik, President of Goodwill. Tuggle asserts that Blahnik "ignored her complaints, told her that he was 'suspending' her complaints, and instructed her to fire workers with disabilities." (*Id.* at ¶ 28). Five days after returning from medical leave Tuggle was terminated from Goodwill without any explanation or justification.

3

## II. ANALYSIS

### A. Standard of Review

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is factually plausible if the complaint contains factual allegations that "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This does not require a showing that the defendant is probably liable, but "it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* To meet this plausibility standard, the complaint must contain more than "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.*

### B. Plaintiff Bargo has failed to plead plausible age discrimination claims under the Age Discrimination in Employment Act and Kentucky Civil Rights Act

Plaintiff Bargo alleges that she was terminated by Goodwill because of her age, in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 623, and Kentucky Civil Rights Act ("KCRA"), K.R.S. § 344.040(1).[1] Under both statutes, "employers are prohibited from discharging or otherwise discriminating against any employee with respect to compensation, terms, conditions, or privileges of employment because of that individual's age." *Allen v. Highlands Hosp. Corp.*, 545 F.3d 387, 393 (6th

---

[1] In their Complaint, Plaintiffs allege that Defendant Goodwill discriminated against them based on age in violation of Title VII of the Civil Rights Act of 1964. However, Title VII does not prohibit age discrimination. *Briggs v. Potter*, 463 F.3d 507, 514 n. 2 (6th Cir. 2006). Title VII prohibits discrimination on the basis of race, color, religion, sex, and national origin. *Id.* The ADEA, however, does prohibit discrimination based on age. As such, Plaintiffs' age discrimination claims under Title VII will be construed as age discrimination claims under the ADEA.

Cir. 2008). "Claims under the KCRA are 'analyzed in the same manner' as ADEA claims." *Id.* (quoting *Williams v. Tyco Elc. Corp.*, 161 F. App'x 526, 531 n. 3 (6th Cir. 2006)).

Defendants assert that Plaintiff Bargo's age discrimination claims must be dismissed because she has failed to plead facts to support a prima facie case. Specifically, Defendants argue that Plaintiff Bargo has failed to plead any facts to support the fourth element—that she was replaced by a person significantly younger than her. *Grosjean v. First Energy Corp.*, 349 F.3d 332, 335 (6th Cir. 2003). While Defendants are correct that Plaintiff Bargo has failed to plead any facts to support this element, that flaw alone does not require dismissal.

In *Swierkiewicz v. Sorema*, 534 U.S. 506 (2002), the Supreme Court considered and rejected the very argument presented by Defendant: that "a complaint in an employment discrimination lawsuit must contain specific facts establishing a prima facie case of discrimination under the framework . . . in *McDonnell Douglas Corp v. Green*, 411 U.S. 792 (1973)." *Swierkiewicz*, 534 U.S. at 508. The Court held that "[t]he prima facie case under *McDonnell Douglas* . . . is an evidentiary standard, not a pleading standard." *Id.* at 510. Thus, a plaintiff need not plead facts to support a prima facie case under *McDonnell Douglas* in order to survive a motion to dismiss. *Id.* Rather, the Court held that the ordinary rules for assessing a complaint, found in Federal Rules of Civil Procedure 8(a)(2), must apply in employment discrimination cases. *Id.*

The Sixth Circuit has recognized that *Swierkiewicz* was unaltered by the Supreme Court's decisions in *Twombly* and *Iqbal*. *Keys v. Humana, Inc.*, 684 F.3d 605, 609 (6th Cir. 2012) (collecting cases). In doing so, the Sixth Circuit has continued to find that "it [is] error for the district court to require [the plaintiff] to plead a prima facie case under *McDonnell*

5

*Douglas* in order to survive a motion to dismiss." *Id.* Respecting this binding authority, the Court will reject Defendants' assertion that Plaintiff Bargo's claims must fail because she has not established the fourth element of an age discrimination claim, and instead review her claim under Rule 8(a).

Even under Rule 8(a), Plaintiff Bargo's Complaint fails to contain a short and plain statement showing she is entitled to relief. Plaintiff does allege that she is over forty (40) years of age – demonstrating that she is a member of the protected class – and alleges that none of the reasons offered for her termination were valid. However, she offers no factual allegations to show that she was terminated based on age. Her only allegation in this regard is that "the basis given for [her] termination was pre-textual and merely a mask to cover-up the pattern of age discrimination throughout Goodwill's Cumberland division." (Doc. # 1 at ¶ 20). Without providing any factual allegations about a pattern of age discrimination, this allegation is nothing but a legal conclusion that will not be accepted as true. *Iqbal*, 556 U.S. at 679 ("While legal conclusions can provide a framework of a complaint, they must be supported by factual allegations."). Bargo's only factual allegation that might explain why she was fired is her statement that Defendant Fryman "had an immediate dislike for [her]," although Bargo never explains why. (Doc. # 5). This allegation certainly does not suggest that Bargo was subjected to discrimination based on age. As a result, Bargo has failed to plead a viable claim under the ADEA and KCRA.

**C.     Plaintiffs' Title VII gender discrimination claims fail as a matter of law**

Defendants move to dismiss Plaintiffs' Title VII gender discrimination claims because they failed to exhaust their administrative remedies before pursuing their claims. Plaintiffs did not respond to this argument, but instead contend that they have pled sufficient facts

to support their claim.  For the following reasons, the Court agrees that Plaintiffs have failed to exhaust their administrative remedies, foreclosing the need to address the merits of Plaintiffs' factual allegations.

"A person seeking to bring a discrimination claim under Title VII in federal court must first exhaust her administrative remedies" by filing a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC").  *Randolph v. Ohio Dept. of Youth Services*, 453 F.3d 724, 731 (6th Cir. 2006).  The purpose of this requirement "is to trigger an investigation, which gives notice to the alleged wrongdoer of its potential liability and enables the EEOC to initiate conciliation procedures in an attempt to avoid litigation." *Dixon v. Ashcroft*, 392 F.3d 212, 217 (6th Cir. 2004) (citations omitted).  This is not meant to be an "overly rigid" requirement that prohibits subsequent litigation because the EEOC charge did not contain "the exact wording which might be required in a judicial pleading." *Randolph*, 453 F.3d at 732.  Instead, "the EEOC complaint should be liberally construed to encompass all claims 'reasonably expected to grow out of the charge of discrimination.'" *Id.* (quoting *Haithcock v. Frank*, 958 F.2d 671, 675 (6th Cir. 1992)).

Here, Plaintiffs Bargo and Tuggle each filed charges of discrimination with the EEOC (Docs. # 3-3, 3-4, respectively), however they both only checked the box for discrimination based on age; they did not check the box for discrimination based on sex.  This failure alone is not fatal, though.  In the Sixth Circuit, courts are required to look to the factual allegations in the charge to determine whether it would give the EEOC notice of another uncharged claim.  *Dixon*, 392 F.3d at 217 (6th Cir. 2004).  Even under this analysis, though, Plaintiffs failed to provide the EEOC with any notice of their gender discrimination claims.  As Bargo explained in her charge, "[she] witnessed the company engage in a

7

pattern of terminating older workers," and she "believe[d] that [she] was terminated because of [her] age . . . ." (Doc. # 3-3). And as Tuggle explained, "[she] is familiar with older manager who have been forced out of their positions in similar ways," and she "believe[d] [she] was harassed and demoted based on [her] age . . . ." (Doc. # 3-4). Neither of Plaintiffs' charges contain any factual allegations that would suggest they were discriminated based on their gender.

Plaintiffs' failures are similar to those addressed in *Oliver v. St. Luke's Dialysis, LLC*, NO. 1:10-cv-2667, 2011 WL 1326251 (N.D. Ohio April 5, 2011). In *Oliver*, the plaintiff brought both age and gender discrimination claims, as Plaintiffs bring in the case *sub judice*. *Id.* at *5. And like the Plaintiffs here, the plaintiff in Oliver only checked the box indicating discrimination based on age. *Id.* And again like the Plaintiffs here, the factual allegations in the plaintiff's charge only referenced discrimination based on age, not gender. *Id.* As a result, the court dismissed the plaintiff's Title VII gender discrimination claim, finding that she had failed to exhaust her administrative claims.

Like the *Oliver* court held, Plaintiffs have failed to exhaust their administrative remedies as to their Title VII gender discrimination claims. While they filed charges with the EEOC, their charges did not give any indication that they were complaining of gender discrimination. As a result, their gender discrimination claims must be dismissed.

**D.    Plaintiff Bargo has failed to state a plausible gender discrimination claim under the Kentucky Civil Rights Act**

In Count IV of her Complaint, Plaintiff Bargo alleges that she was wrongfully terminated based on her gender in violation of the KCRA, K.R.S. § 344.040. Because K.R.S. § 344.040 mirrors Title VII of the Civil Rights Act of 1964, discrimination claims

8

under the KCRA are to be evaluated using the federal standard of gender discrimination. *Smith v. Leggett Wire Co.*, 220 F.3d 752, 758 (6th Cir. 2000). While Bargo is not required to plead facts to support a prima facie case of gender discrimination in order to survive a motion to dismiss, she "must allege sufficient factual content from which a court, informed by its judicial experience and common sense, could draw the reasonable inference that [Goodwill] discriminated against her with respect to her compensation, terms, conditions, or privileges of employment, *because of* her . . . sex . . . ." *Keys v. Humana*, 684 F.3d 605, 610 (6th Cir. 2012). Defendants move to dismiss this claim, arguing that Bargo has failed to plead any facts that establish she was terminated *because of* her sex. The Court agrees.

The substance of Count VI offers nothing but legal conclusions and a recital of the elements of a gender discrimination claim. It states:

> The Defendant, Goodwill, has discharged these Plaintiffs and otherwise discriminated against these Plaintiffs, with respect to compensation, terms, conditions, or privileges of employment because of their sex and their age, as both of them are over forty (40), in violation of K.R.S. § 344.040. As such, Goodwill has committed unlawful discrimination practices against these Plaintiffs and the Plaintiffs are entitled to recover damages under State law.

(Doc. # 1 at ¶ 38). This is nothing more than "an unadorned, the-defendant-unlawfully harmed-me accusation," *Iqbal*, 556 U.S. at 678, that fails to meet the pleading standard of Rule 8.

While these conclusions are insufficient alone to satisfy Rule 8, they can be saved by the fact section of Bargo's Complaint, so long as it offers facts to establish that Bargo was terminated because of her gender. *Iqbal*, 556 U.S. at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.").

9

However, upon review, the fact section is entirely devoid of any factual allegations that support a gender discrimination complaint. In summary, the allegations state that Bargo served as the Store Manager; she received positive evaluations for ten consecutive years; when Defendant Fryman was promoted to Vice President of Goodwill, she demoted Bargo and began relieving her of her job duties; Fryman eventually terminated Bargo. Nothing about these allegations suggests that Bargo was terminated *because of* her gender. In fact, paragraph 20 of the Complaint suggests, in conclusory fashion, that she was fired solely due to age discrimination. As such, Bargo has failed to plead a plausible claim of gender discrimination under the KCRA, and her claim is therefore dismissed.[2]

### E.  Plaintiffs have failed to plead plausible intentional infliction of emotional distress claims

In Count II of their Complaint, Plaintiffs allege intentional infliction of emotional distress ("IIED") claims against each of the Individual Defendants. The Kentucky Supreme Court has adopted the Restatement (Second) of Torts definition of IIED, which states:

> One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to others results from it, for such bodily harm.

*Craft v. Rice*, 671 S.W.2d 247, 251 (Ky. 1984) (quoting RESTATEMENT (SECOND) OF TORTS § 46). To recover for IIED, a plaintiff must establish the following elements:

(1)  the wrongdoer's conduct was intentional or reckless;

(2)  the conduct must be outrageous and intolerable in that it offends against the

---

[2] While the Court has dismissed Plaintiff Bargo's Title VII gender discrimination claim because she failed to exhaust her administrative remedies, the Court will also rely on this analysis as an alternative justification for dismissing her Title VII claim.

> generally accepted standards of decency and morality;
>
> (3) there must be a causal connection between the wrongdoer's conduct and the emotional distress; and
>
> (4) the distress suffered must be severe.

*Osborne v. Payne*, 31 S.W.3d 911, 913 (Ky. 2000).

Defendants argue that Plaintiffs have not alleged sufficiently outrageous conduct to permit recovery.³ The Kentucky Supreme Court acknowledges that "it is for the court to determine, in the first instance, whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery." *Stringer v. Wal-Mart Stores, Inc.*, 151 S.W.3d 781, 788 (Ky. 2004). For the following reasons, the Court agrees with Defendants that their alleged conduct does not rise to the level of outrageousness necessary to support a plausible IIED claim.

---

³ Defendants also assert that Plaintiffs' IIED claims are preempted and subsumed by their KCRA claims because each claim essentially seeks damages for the same harm – emotional harm. Defendants cite to numerous decisions from both state and federal courts in support of their position. *See McDonald's Corp. v. Ogburn*, 309 S.W.3d 274, 286 (Ky. App. 2009); *Kroger Co. v. Buckley*, 113 S.W.3d 644, 647 (Ky. App. 2003); *Messick v. Toyota Motor Mfg. Ky., Inc.*, 45 F. Supp. 2d 578, 582 (E.D. Ky. 1999). For example, in *Buckley*, the Kentucky Court of Appeals held that "when a plaintiff prosecutes a KRS Chapter 344 claim and an outrageous conduct claim concurrently, the former preempts the latter." *Buckley*, 113 S.W.3d at 647.

While the cases cited by Defendants appear controlling on their face, Defendants argument has been rejected by the Kentucky Court of Appeals in *Wilson v. Lowe's Home Center*, 75 S.W.3d 229 (Ky. App. 2001). There, the plaintiff brought an IIED and discrimination claim against her employer, as well as an IIED claim against three individual defendants. *Id.* at 239. The Court of Appeals held that the IIED claim against the employer was preempted and subsumed by the discrimination claim, but that the IIED claims against the three individuals were not subsumed. *Id.* As it relates to the employer, the court recognized that both claims sought damages for emotional distress, and held that the statutory right of action controlled over the common law action. *Id.* However, the court recognized that plaintiffs may bring IIED claims "against the offending individuals against whom no civil rights claim could have been filed." *Id.* Pursuant to *Wilson*, Plaintiffs' IIED claims, brought solely against the individual defendants, are not preempted by their KCRA claims.

Conduct is only actionable under the tort of IIED if it is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* at 789 (Ky. 2004) (quoting RESTATEMENT (SECOND) OF TORTS § 46(a) cmt. d)). It is the type of conduct that would lead an average member of the community to exclaim, "Outrageous!" when he hears the facts of the case. *Id.* "Mere insults, indignities, threats, annoyances, petty oppressions, [and] other trivialities" do not meet this standard. *Id.*

The alleged conduct in Plaintiffs' Complaint falls far short of this standard. Bargo alleges that Defendant Fryman disliked her and did not keep it to herself, demoted her, forced her to work longer weeks, and terminated her. Similarly, Tuggle alleges that Defendant Hunter reprimanded her for alleged customer complaints and because she took excessively-long lunch breaks; Goodwill promoted a younger, less-qualified male to the Donated Goods Manager position rather than her; she lost many job responsibilities when she returned from medical leave and was demoted; she was asked to perform duties beyond her medical limitations; and she was terminated. None of these allegations, even considered collectively, would cause the average member of the community to exclaim, "Outrageous!"

The conduct also falls far short of those cases in which Kentucky courts have found that the defendant's conduct was actionable under IIED. As the *Stringer* Court summarized, Kentucky courts have found the following conduct sufficient to warrant recovery:

> Where the defendants: (1) harassed the plaintiff by keeping her under surveillance at work and home, telling her over the CB radio that he would put her husband in jail and driving so as to force her vehicle into an opposing

lane of traffic; (2) intentionally failed to warn the plaintiff for a period of five months that defendant's building, in which plaintiff was engaged in the removal of pipes and ducts, contained asbestos; (3) engaged in a plan of attempted fraud, deceit, slander, and interference with contractual rights, all carefully orchestrated in an attempt to bring [plaintiff] to his knees; (4) committed same-sex sexual harassment in the form of frequent incidents of lewd name calling coupled with multiple unsolicited and unwanted requests for homosexual sex; (5) was a Catholic priest who used his relationship [as marriage counselor for] the [plaintiff] husband and the wife to obtain a sexual affair with the wife; (6) agreed to care for plaintiff's long-time companion-animals, two registered Appaloosa horses, and then immediately sold them for slaughter; and (7) subjected plaintiff to nearly daily racial indignities for approximately seven years.

*Stringer*, 151 S.W.3d at 789-90 (internal citations omitted). Being demoted, criticized for work performance, passed over for promotion, and terminated pales in comparison to each of these instances where Kentucky courts have found recovery appropriate. Ultimately, "[t]he mere termination of employment . . . do[es] not rise to the level of outrageous conduct . . . necessary to support a claim for IIED. *Miracle v. Bell County Emergency Med. Servs.*, 237 S.W.3d 555, 560 (Ky. App. 2007). As a result, Plaintiffs' have failed to plead sufficiently outrageous conduct to make it plausible that they would recover.

Despite their failure to plead outrageous conduct, Plaintiffs ask the Court to permit them discovery to determine whether Defendants' conduct was sufficiently outrageous. The Supreme Court rejected a similar request in *Iqbal.* There, the Court held that when a complaint is deficient under Rule 8, the plaintiff is not entitled to discovery, "cabined or otherwise." *Iqbal*, 556 U.S. at 686. Because Plaintiffs have failed to meet the minimal requirements of Rule 8, they are not permitted to conduct discovery to find a factual basis for their claims.

Plaintiffs' IIED claims fail for a second reason – they have failed to allege severe emotional distress. "[T]o meet the standard of severe emotional distress the injured party

must suffer distress that is 'substantially more than mere sorrow.'" *Benningfield v. Pettit Envtl., Inc.*, 183 S.W.3d 567, 572 (Ky. App. 2005). For example, the Kentucky Court of Appeals found severe emotional distress where a plaintiff established that she "broke down," suffered from many panic attacks, had major problems with high blood pressure, suffered from anxiety and depression, and contemplated suicide. *Burgess v. Taylor*, 44 S.W.3d 806, 812 (Ky. App. 2001). Here, Plaintiffs have not offered a single factual allegations about the distress they suffered. Rather, they only allege that they suffered "extreme emotional distress and substantial damage." This, though, is nothing but a conclusion and recitation of the elements of the cause of action, and fails to demonstrate a claim that is plausible on its face. Therefore, Plaintiffs' IIED claims are dismissed.

> **F.** **Plaintiffs' defamation and false light claims are barred by the one-year statute of limitations**

Plaintiffs bring false light invasion of privacy and defamation claims in Counts III and V of their Complaint, respectively. Defendants move to dismiss these claims because they are barred by the one-year statute of limitations set forth in K.R.S. § 413.140(1)(d). Plaintiffs do not respond to Defendants' assertion that their defamation claim is time barred; however, Plaintiffs argue that their false light claims are not time barred because they were timely filed within the five-year statute of limitations. Because each claim is subject to a one-year statute of limitations, the Court finds that the claims are time barred and are, therefore, dismissed.

Under, K.R.S. § 413.140(1)(d), libel and slander actions must be commenced within one year after the cause of action accrued. A libel or slander action is said to accrue on the date of publication or injury. *Gen. Elec. Co.*, 608 S.W.2d 69, 70 (Ky. App. 1980).

Courts have applied this one-year statute of limitations to false light claims. *See, e.g., Branham v. Micro Computer Analysts*, 350 F. App'x 35, 38 (6th Cir. 2009); *Warner v. Bob Evans Farms, Inc.*, No. 5:09-cv-63, KKC, 2010 WL 1451354, at *5 (E.D. Ky. April 8, 2010).

While Plaintiffs acknowledge that many courts have applied the one-year statute of limitations to false light claims, Plaintiffs ask the Court to follow the Kentucky Supreme Court's decision in *Craft v. Rice*, 671 S.W.2d 247, 250 (Ky. 1984), where the Court applied the five-year statute of limitations to an IIED claim. Plaintiffs point to the *Craft* Court's finding that an IIED claim is significantly similar to a false light claim because they often involve similar behavior. *Id.* Plaintiffs thus suggest that because the claims are similar they must share the same statute of limitations. However, the Sixth Circuit Court of Appeals has rejected this argument.

In *Branham v. Micro Computer Analysts*, the Sixth Circuit considered "whether the [Plaintiffs'] claim for invasion of privacy against [the Defendants] is subject to a one-year or five-year statute of limitations." 350 F. App'x at 37. The *Branham* Court recognized that "no Kentucky statute specifically lists invasion of privacy as a claim that must be brought within one year after the cause of action accrues." *Id.* However, the court cited the principle that "'a statute of limitations which specifically mentions a recognized tort applies to all actions founded on that tort.'" *Id.* (quoting *Lashlee v. Sumner*, 570 F.2d 107, 109 (6th Cir. 1978)). The court then held that when an invasion of privacy claim "springs from" the same act underlying a libel or slander claim, the libel and slander one-year statute of limitations applies. *Id.* at 38. In reaching this holding, the court specifically rejected the argument that *Craft v. Rice* compels the conclusion that the five-year statute of limitations applies. *Id.*

15

Here, like in *Branham*, Plaintiffs' false light claims "spring from" their defamation claims. In other words, Plaintiffs seek damages for their loss of reputation, which was caused by allegedly false statements. This is the essence of their defamation claims as well. As a result, the one-year statute of limitations applies to Plaintiffs' false light and defamation claims.

The dispositive issue, then, is when did Plaintiffs' claims accrue. Although Plaintiffs do not specifically identify when each allegedly defamatory comment was made, it is apparent that each of the comments were made while Defendants were employed at Goodwill.[4] Because Tuggle was terminated on September 30, 2011, and Bargo was terminated on September 27, 2011, the latest that any of the allegedly defamatory statements could have been made was September 30, 2011. Thus, Plaintiffs' claims began to accrue on September 30, 2011, and any action must have been filed on or before September 30, 2012 in order to be timely. Plaintiffs did not file their Complaint until November 8, 2012, approximately one month after the statute of limitations ran. As a result, their defamation and false light claims are time barred and therefore dismissed.

---

[4] In their Motion to Dismiss, Defendants acknowledge that Plaintiffs did not specifically allege when each defamatory statement was made. However, based on their review of the Complaint, Defendants asserted that each statement was made before the Plaintiffs were terminated from Goodwill. Plaintiffs did not challenge this assertion in their response, apparently conceding that they are only challenging statements made during their employment.

Furthermore, upon the Court's review of the Complaint, Defendants' assertion appears accurate. Plaintiff Bargo complains that Defendant Fryman "had an immediate dislike for [her]" upon being promoted and "did not keep it to herself." (Doc. # 1 at ¶ 18). Likewise, Plaintiff Tuggle asserts that "[b]eginning in March 2011, [she] . . . had several false allegations levied against her." (*Id.* at ¶ 22). Plaintiffs make no allegations about statements made after their termination. As such, the Court concludes that Plaintiffs' Complaint only challenges statements made during their employment.

**G. Plaintiffs' vicarious liability and punitive damages claims fail as a matter of law**

In Count VI, Plaintiffs allege that Goodwill is vicariously liable for the tortious conduct of its employees. Under Kentucky law, an employer is vicariously liable for the tortious conduct of its employees, so long as the conduct occurred within the course and scope of the employee's employment. *Booker v. GTE.net LLC*, 350 F.3d 515, 518 (6th Cir. 2003) (applying Kentucky law). Here, the Court has already concluded that Plaintiffs have failed to plead a plausible claim against each of the Individual Defendants. As a result, Plaintiffs have failed to allege any tortious conduct for which Goodwill can be vicariously liable. Plaintiffs vicarious liability claims are therefore dismissed.

In Count VII, Plaintiffs allege that Defendants are liable for punitive damages. Based on the Court's ruling herein, only two claims will proceed to discovery: Plaintiff Tuggle's ADEA and KCRA claims. Punitive damages are not available under either statute. *Looney v. Commercial Union Assur. Co.*, 428 F. Supp. 533, 536 (E.D. Mich. 1977) (holding that punitive damages are not available under the ADEA); *Brookes v. Lexington-Fayette Urban County Housing Authority*, 132 S.W.3d 790, 808-09 (Ky. 2004) (holding that punitive damages were not an available remedy under K.R.S. § 344.450). As a result, Plaintiffs' punitive damages claim is hereby dismissed.

### III. CONCLUSION

Accordingly, for the reasons stated herein, **IT IS ORDERED** as follows:

(1)  Defendants' Motion to Dismiss (Doc. # 3) is hereby **GRANTED**;

(2)  All of Plaintiff Bargo's claims (Doc. # 1) are hereby **DISMISSED WITH PREJUDICE**; and

(3) Plaintiff Tuggle's Title VII gender discrimination claim in Count I, as well as her claims in Count II, Count III, Count V, Count VI, and Count VII (Doc. # 1) are hereby **DISMISSED WITH PREJUDICE**.

This 27th day of August, 2013.



Signed By:
David L. Bunning
United States District Judge

G:\DATA\Opinions\London\12-221 MOO granting motion to dismiss.wpd