UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
AT LONDON

CIVIL ACTION NO. 12-221-DLB

GLENNA BARGO and VICKIE TUGGLE                                      PLAINTIFFS


vs.                          <u>MEMORANDUM OPINION AND ORDER</u>


GOODWILL INDUSTRIES OF KENTUCKY, INC, et al.                        DEFENDANTS

**** **** **** ****

Plaintiff Vickie Tuggle alleges that her former employer, Defendant Goodwill Industries of Kentucky, Inc. (Goodwill), discriminated against her because of her age when it declined to promote her and terminated her.  Goodwill moves for summary judgment, arguing that it did not promote Tuggle because other candidates were more qualified and that it terminated her because she failed to show up to work for three days after her personal leave expired.  Because Tuggle has not shown that there is an issue of material fact whether Goodwill's legitimate, nondiscriminatory reasons for its actions were a pretext for age discrimination, the Court will **grant** Goodwill's Motion for Summary Judgment

## I.     Factual and Procedural Background

Tuggle worked for Goodwill from 1994 until her termination on September 27, 2011.  (Doc. # 22, Ex. 1).   At the time of her termination, Tuggle was sixty-seven (67) years old.  (Doc. # 1 at ¶ 24).  Goodwill originally hired her as Center Manager for its London, Kentucky store, which is part of its Cumberland division.  As Center Manager, Tuggle's tasks included supervising the store, training employees, handling personnel matters, and

promoting Goodwill's mission.  (Doc. # 22, Ex. 2).  The London store received several performance awards during Tuggle's time as Center Manager.  (Doc. # 22, Ex. 3).  Goodwill eventually opened a larger location in London and made Tuggle Center Manager of that store.

In February 2011, Tuggle applied for two open Regional Donated Goods Manager (RDGM) positions.  (Doc. # 22, Ex. 5 at 34).  RDGMs are responsible for supervising Center Managers.  (Doc. # 22, Ex. 3 at 56).  To assist in the hiring process, Kristel Fryman, then Vice President of Goodwill's Cumberland Division, created a three-person committee. (Doc. # 22, Ex. 5 at 35).  The committee interviewed Tuggle for the RDGM positions, but it did not recommend her.  *Id.* at 36-37.

The committee members indicated, both in their interview notes and during conversations with Fryman, that they did not suggest Tuggle for the position because she demonstrated a lack of respect for supervisors and did not answer interview questions. (Doc. # 22, Ex. 4 at 36, Ex. 5 at 36, Ex. 6 at 1-2).  Instead, the committee recommended two other individuals who were ultimately hired: David Schult and Christine Wilson.  (Doc. # 22, Ex. 5 at p. 36-37).  Both received a higher overall interview score than Tuggle – a twenty-three (23) compared to a fifteen (15).  (Doc. # 22, Ex. 6 at 3-6).  Schult and Wilson were both in their fifties at the time of their promotions. (Doc. # 22, Ex. 5 at 37).

Shortly thereafter, on March 31, 2011, Tuggle informed Goodwill that she wanted to take leave under the Family Medical Leave Act (FMLA) so that she could have an operation on her foot.  (Doc. # 22, Ex. 9).  Fryman responded by providing Tuggle with Goodwill's FMLA policy and the required forms.  (Doc. # 22, Ex. 10).  On April 7, 2011, Tuggle made a formal request for FMLA leave.  (Doc. # 22, Ex. 11).  Two weeks later,

Goodwill granted her leave from April 19, 2011 through July 25, 2011.  (Doc. # 22, Ex. 3 at 129-30).

Tuggle states that in the time period between her March 31 informal request for leave and her April 19 leave date, she began to experience harassment from fellow Goodwill employees.  (Doc. # 23 at 3).  Specifically, she asserts that fellow employees lodged false reprimands and complaints against her.  (Doc. # 25 at 80-84).  She further contends that when she returned to work her duties changed from doing "paperwork" to working in the "back."[1]  *Id.* at 129-30.  According to Tuggle, working in the "back" was in violation of her medical restrictions.[2]  *Id.* at 92.

Tuggle returned from her FMLA leave on July 27, 2011.  She then took some additional personal leave, but when her leave ended, she failed to return to work.  (Doc. # 22, Ex. 13).  On August 11, 2011, Fryman wrote Tuggle a letter notifying her that she had exhausted her FMLA leave[3] and that she therefore needed to submit a request for additional "personal leave."  *Id.*  Fryman informed Tuggle that she did not follow Goodwill's policy of obtaining  prior approval for the additional leave time and that if she did not make an appropriate request within three days Goodwill would terminate her.  *Id.*  Tuggle responded by making a request for leave until September 22, 2011 (Doc. # 22, Ex. 14), which Goodwill granted (Doc. # 22, Ex. 15).[4]

---

[1]  In Tuggle's Response, she contends that those new duties including heavy lifting and overhead work.  (Doc. # 23 at 3).  However, her citation to the record does not substantiate that allegation.

[2]  Tuggle's Complaint does not allege an Americans with Disability Act (ADA) violation.

[3]  Tuggle's Complaint does not allege an FMLA violation.

[4]  Because Tuggle had a reprimand on file (Doc. # 22, Ex. 8, April 12 Reprimand), under Goodwill policy she was not eligible for personal leave (Doc. # 22, Exs. 15, 16).  However, at Fryman's suggestion, Goodwill executives voted for an exception and approved Tuggle's request.  (Doc. #22, Exs. 5, 17).

In the letter granting the additional time off, Fryman informed Tuggle that Goodwill would not grant her any further leave. *Id.* She also warned Tuggle that Goodwill could have terminated her for failing to seek prior approval before missing work and that Tuggle should contact her supervisor (at that time Schult) before her leave expired to confirm her intent to return. *Id.* She also noted that based on Goodwill policy, when Tuggle returned to work she would no longer be a Center Manager, but would instead be placed in a position that met Goodwill's needs. *Id.*

On September 22, 2011, the day her leave ended, Tuggle called and left Fryman a message, telling her that she was being referred to another doctor and that her appointment would "probably be next week one day." (Doc. # 22, Ex. 3 at 15). In her message, she did not request additional leave or inform Fryman that her doctor had not yet released her to work. *Id.* at 15-16. Tuggle never did return to work, and on September 27, 2011, Fryman sent her a letter terminating her employment. (Doc. # 22, Ex. 18). The letter referenced Fryman's previous warning that failing to receive prior approval before missing work could result in termination, as well as her previous admonition that Goodwill would not grant Tuggle additional personal leave beyond September 22, 2011. *Id.*

On November 8, 2012, Tuggle and Glenna Bargo, another former Goodwill employee, filed suit against Goodwill, alleging age and gender discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 et seq.; the Age Discrimination in Employment Act of 1967 (ADEA),[5] 29 U.S.C. § 621 et. seq.; and the Kentucky Civil Rights

---

[5] In her Complaint, Tuggle does not allege an ADEA violation, instead alleging age discrimination in violation of Title VII of the Civil Rights Act. (Doc. # 1 at 8). Because Title VII does not prohibit age discrimination, *see* 42 U.S.C. § 2000e-2(a), the Court assumes Tuggle intended to reference the ADEA.

4

Act, Ky. Rev. Stat. Ann. § 344.040.  (Doc. # 1).  Tuggle and Bargo also brought state-law claims against Goodwill and several of its employees for intentional infliction of emotional distress, defamation, and invasion of privacy.  *Id.*  In response, Goodwill and its co-defendants filed a Motion to Dismiss (Doc. # 3) all claims, except for Tuggle's ADEA and state civil rights claims against Goodwill alleging age and gender discrimination.  On August 27, 2013, this Court granted the Defendants' motion.  (Doc. # 6).  Goodwill now moves for summary judgment of Tuggle's federal and state age discrimination claims.  (Doc. # 22). The matter is fully briefed (Doc. ## 22, 23, 24) and ripe for review.

## II.    Analysis

### A.    Standard of review

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party has the initial burden of demonstrating that there is no evidence to support the non-moving party's case.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  Once the moving party has met its burden, the non-moving party must cite to evidence in the record upon which "a reasonable jury could return a verdict " in its favor; a mere "scintilla of evidence" will not do.  *Anderson v. Liberty Lobby*, 477 U.S. 242, 248-52 (1986).  At summary judgment, a court "views the evidence in the light most favorable to the nonmoving party and draws all reasonable inferences in that party's favor."  *Slusher v. Carson*, 540 F.3d 449, 453 (6th Cir. 2008).

### B.    Age discrimination

Under the ADEA,[6]  an employer cannot "discharge . . . or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's age . . . ." 29 U.S.C. § 623(a)(1).  A plaintiff may establish an ADEA violation by either direct or circumstantial evidence.  *Geiger v. Tower Automotive*, 579 F.3d 614, 620 (6th Cir. 2009).   Direct evidence of discrimination is evidence that "*requires* the conclusion that unlawful discrimination was [the but-for cause of] the employer's actions."  *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir. 2003) (en banc) (citation omitted) (emphasis added).  Circumstantial evidence "is proof that does not on its face establish discriminatory animus, but does allow a factfinder to draw a reasonable inference that discrimination occurred."  *Id.*

When an ADEA plaintiff fails to present direct evidence of age discrimination, the claim is analyzed under the *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973), burden-shifting framework.  *Blizzard v. Marion Technical College*, 698 F.3d 275, 283 (6th Cir. 2012).  Under this standard,  the plaintiff is initially charged with making out a prima facie case of age discrimination.  *McDonnell Douglas*, 411 U.S. at 802.  Once the plaintiff establishes her prima facie case, the defendant must then "articulate some legitimate, nondiscriminatory reason" for the adverse employment action.  *Id.*  If the defendant does

---

[6] Tuggle also brings an age discrimination claim under the Kentucky Civil Rights Act, which makes it unlawful for an employer to "discharge any individual[ ] or otherwise to discriminate against an individual with respect to compensation, terms, conditions, or privileges of employment, because of the individual's . . . age forty (40) and over . . . ." Ky. Rev. Stat. Ann. § 344.040(1)(a).  Kentucky Civil Rights Act claims alleging age discrimination "are 'analyzed in the same manner' as ADEA claims." *Allen v. Highlands Hosp. Corp.*, 545 F.3d 387, 393–94 (6th Cir .2008) (quoting *Williams v. Tyco Elec. Corp.*, 161 F. App'x 526, 531 & n. 3 (6th Cir. 2006); *Harker v. Fed. Land Bank of Louisville*, 679 S.W.2d 226, 229 (Ky.1984).  Therefore, the Court's analysis of Tuggle's ADEA claim will serve to adjudicate her state claim.

so, "the burden of production shifts back to the plaintiff to demonstrate that the proffered reason is a pretext." *Sutherland v. Mich. Dep't of Treasury*, 344 F.3d 603, 615 (6th Cir. 2003). Although the burden of production shifts between the parties, the "burden of persuasion remains on the plaintiff to demonstrate that age was the 'but-for' cause of her employer's adverse action." *Provenzano v. LCI Holdings*, *Inc.*, 663 F.3d 806, 812 (6th Cir. 2011) (citing *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 253 (1981)).

### C.   Tuggle's age discrimination claims

Tuggle alleges two instances of age discrimination: (1) when Goodwill did not hire her for one of the open RDGM positions; and (2) when Goodwill terminated her. (Doc. # 23 at 5). With respect to both claims, Goodwill asserts that Tuggle has presented no direct evidence of age discrimination. (Doc. # 22 at 7, 11). Tuggle does not dispute that argument and cites to no such evidence in the record. (*See* doc. # 23). Instead, Tuggle rests her age discrimination claims entirely on circumstantial evidence. *See id.* at 9-10. Because the parties present different arguments with respect to the two claims, the Court will analyze them separately.

#### 1.   Decision not to promote

##### a.   Tuggle has made a prima facie case

To make out a prima facie case of age discrimination based on failure to promote, a plaintiff must show the following: (1) she is a member of the protected class (at least forty (40) years of age); "(2) she applied for and was qualified for a promotion; (3) she was considered for and was denied the promotion; and (4) other employees of similar qualifications who were not members of the protected class received promotions at the time

7

the plaintiff's request for promotion was denied." *Provenzano*, 663 F.3d at 812-13.

Goodwill asserts that Tuggle has not made out a prima facie case that it violated the ADEA when it decided not to hire her for one of the RDGM positions. (Doc. # 22 at 11). In support, Goodwill points to Tuggle's failure in her deposition to allege that she was not promoted because of her age. *Id.*

Upon review of the record, Tuggle has made out a prima facie case of age discrimination: (1) she was sixty-seven (67) when she applied for the promotion; (2) there is a question of fact whether her seventeen (17) years as a Center Manager qualified her for the RDGM position; (3) she did not get the promotion; and (4) a reasonable jury could find that Tuggle's experience at Goodwill made her qualifications similar to that of Wilson and Schult, who are both approximately ten (10) years younger than Tuggle.[7]  *See Grosjean v. First Energy Corp.*, 349 F.3d 332, 336 (6th Cir. 2003) ("Age differences of ten or more years have generally been held to be sufficiently substantial to meet the requirement of the fourth part of age discrimination prima facie case.").

> **b.   Tuggle has not demonstrated that Goodwill's nondiscriminatory reason for not promoting her is pretext for age discrimination**

Although Tuggle has made out a prima facie case that Goodwill did not promote her because of her age, Goodwill has offered a legitimate, nondiscriminatory reason for its actions. Specifically, Goodwill asserts that the individuals it hired to fill the RDGM positions, Wilson and Schult, "interviewed better." (Doc. # 22 at 12).   Indeed, in their

---

[7] Although Wilson and Schult were both in the protected class because they were in their fifties, under the ADEA, "[t]he fact that one person in the protected class has lost out to another person in the protected class is . . . irrelevant, so long as he has lost out because of his age." *O'Connor v. Consolidated Coin Caters Corp.*, 517 U.S. 308, 312 (1996).

8

interview notes, the hiring committee stated that Wilson gave "excellent interview responses" and "demonstrat[ed] the ability to perform all required qualifications." (Doc. # 22, Ex. 6 at 3). Similarly, they remarked that Schult gave "great responses to interview questions" and also "demonstrat[ed] the ability to perform all qualifications of this position." *Id.* at 5. The committee gave both candidates an overall interview score of twenty-three (23). *Id.* at 3,5.

Tuggle did not perform as well in her interview, receiving an overall score of fifteen (15). *Id.* at 1. In their interview notes, the committee stated that Tuggle "commented on" questions but did not answer them, was in "denial" concerning employee issues, and "indicated a lack of respect" for two previous supervisors. *Id.* After speaking with the committee about the interviews, Fryman acted on their recommendation and hired Wilson and Schult for the RDGM positions. (Doc. # 22, Ex. 5 at 36-37). Based on Wilson's and Schult's superior interview performances, that decision was legitimate and nondiscriminatory. See *Heath v. Ohio Turnpike Comm'n*, 85 F. App'x 494, 497 (6th Cir. 2004) (holding that a poor interview performance is a legitimate reason for not promoting an employee).

Because Goodwill has articulated a nondiscriminatory reason for not promoting Tuggle, the burden shifts back to Tuggle to prove that Goodwill's reason is pretext for age discrimination. *Blizzard*, 698 F.3d at 285. Tuggle's pretext argument is that she was the most qualified of the applicants and that "her . . . denial of promotion was part of an overall pattern of behavior by [Goodwill] which involv[ed] terminating elderly employees and replacing them with younger ones." (Doc. # 23 at 2, 9). When a plaintiff, such as here, makes a pretext argument based on relative qualifications, she must show that she is either

(1) "a plainly superior candidate, such that no reasonable employer would have chosen the" other candidates over her, or (2) "as qualified as if not better qualified than the [chosen candidates], and the record contains other probative evidence of discrimination." *Provenzano*, 663 F.3d at 815.

In maintaining that she was more qualified than Wilson and Schult, Tuggle cites the performance awards won by her and her store during her time as Center Manager. (Doc. # 23 at 2). She also notes that she had more experience than Schult, who had only been with Goodwill for six months.[8] *Id.* at 2. Although this evidence creates an issue of fact whether Tuggle was *as qualified as* Wilson and Schult for the RDGM positions, in light of their respective interview performances, no reasonable jury could find that Tuggle was "a plainly superior candidate, such that no reasonable employer would have chosen" Wilson and Schult. *See Provenzano*, 663 F.3d at 815. Accordingly, Tuggle must point to "other probative evidence of discrimination." *Id.* at 816.

The only probative evidence of age discrimination Tuggle cites is her contention that Goodwill engaged in a "pattern of terminating elderly employees and replacing them with younger ones." (Doc. # 22 at 9). In making this allegation, Tuggle names four former Goodwill employees: Kay Bargo (a former plaintiff in this suit), Stephanie Mullins, Lynette Pace, and Gale McCoy. (Doc. # 25 at 30). During discovery, the first three individuals were deposed, while Goodwill produced a termination letter for the fourth. (Doc. ## 22 (at Ex. 22), 29, 30, 31).

---

[8] In his deposition, Schult indicates that he did have over ten (10) years of managerial experience prior to starting at Goodwill. (Doc. # 28 at 20).

Even when viewed in the light most favorable to Tuggle, the circumstances surrounding the termination and resignation of these four individuals provides no probative evidence of age discrimination.  Bargo testified that she does not know if the person who replaced her is older or younger.  (Doc. # 31 at 51).  Mullins stated that she was fired for not returning to work after her personal leave ended, but that she had no criticism of the way Goodwill handled her termination.  (Doc. # 30 at 25-26).  In Pace's deposition, she testified that she worked for Goodwill for two-and-a-half years and then resigned because she was being harassed by her supervisor, Karen Cogdill.  (Doc. # 29 at 6, 28-29).  McCoy was terminated because she admitted that she violated Goodwill's purchase policy.  (Doc. # 22, Ex. 22).  Tuggle points to no evidence that Goodwill even replaced these individuals, much less that it replaced them with younger employees.  Because Tuggle has failed to establish that there is a dispute of material fact whether Goodwill's reason for not promoting her is pretext for age discrimination, the Court will grant Goodwill's motion for summary judgment on this claim.

### 2.   Decision to terminate

#### a.   Tuggle has made a prima facie case

To establish a prima facie case of termination because of age discrimination, a plaintiff must prove four elements: (1) she is a member of the protected class (age forty (40) and older); (2) she was qualified for the job; (3) she was terminated; and (4) she was replaced by a "significantly younger person."  *Grosjean*, 349 F.3d at 335-36.  Goodwill concedes (Doc. # 22 at 7), and this Court agrees, that Tuggle has made out a prima facie case of age discrimination with respect to her termination: she was in her sixties when she

was terminated, she had held her Center Manager position for seventeen (17) years, and she was replaced by someone twenty plus years her junior (Doc. # 27 at 49-50).

### b. Tuggle has not demonstrated that Goodwill's nondiscriminatory reason for terminating her is pretext for age discrimination

In rebuttal, Goodwill states that it terminated Tuggle because she failed to return to work after exhausting her FMLA and personal leave.  (Doc. # 22 at 8).  Because it is both legitimate and nondiscriminatory to terminate an employee who does not show up for work, the burden shifts to Tuggle to show that this reason is pretext for age discrimination.

To establish pretext, Tuggle must "produce 'sufficient evidence from which a jury could reasonably reject [Goodwill's] explanation . . . .'" for why it terminated her. *Blizzard*, 698 F.3d at 285 (quoting *Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 (6th Cir. 2009)). Tuggle can satisfy this burden by demonstrating one of the following about Goodwill's reason: (1) it has no basis in fact, (2) it is true, but did not actually motivate Goodwill, or (3) it is insufficient to motivate discharge. *Blizzard*, 698 F.3d at 285.  The pretext inquiry is a commonsense one, and the ultimate question the court must determine is "did the employer fire the employee for the stated reason or not?" *Id.* (quoting *Chen*, 580 F.3d at 400 n.4).

Tuggle admits that she did not return to work after her personal leave ended[9] (Doc. # 22, Ex. 3 at 15-16) and she does not suggest that failing to show up for work is insufficient to motivate discharge.  Rather, Tuggle argues that Goodwill's true motivation

---

[9]  Tuggle does note in her Response that she "disputes the facts underlying the incident that lead to her termination." (Doc. # 23 at 9).  However, it is not clear what Tuggle disputes, since she admits that she did not return to work when her personal leave expired.

in terminating her was to "replace her, as well as other mangers, with younger employees."
(Doc. # 23 at 6; *see* doc. # 25 at 59).  This is an argument that Goodwill's proffered reason
"did not actually motivate."  *See Blizzard*, 698 F.3d at 285.  When a plaintiff argues that an
employer's proffered reason did not actually motivate, she must show that the "weight of
the circumstantial evidence of discrimination makes it 'more likely than not' that the
employer's explanation is a pretext, or coverup."  *Mazer v. Diamond Shamrock Chemicals
Co*, 29 F.3d 1078, 1084 (6th Cir. 1994), *overruled on other grounds by Geiger v. Tower
Auto*, 579 F.3d 614 (6th Cir. 2009).

Tuggle cites *Hamilton v. General Elec. Co.*, 556 F.3d 428 (6th Cir. 2009), in support
of her argument that Goodwill terminated her because of her age, not because she failed
to show up for work.  In *Hamilton*, the Sixth Circuit held that it is the "very definition of
pretext" when an employer waits for a legitimate reason to materialize so that it can cover
up its discriminatory motive for firing an employee.  *Id.* at 436 (quoting *Jones v. Potter*, 488
F.3d 397, 408 (6th Cir. 2007)).  The court found evidence of prextext in *Hamilton* because
the employer increased its surveillance of the plaintiff after he filed an age-discrimination
complaint with the EEOC, *and* because the plaintiff contested the factual basis for his
termination. 556 F.3d at 436.  Specifically, the defendant-employer in *Hamilton* alleged that
the plaintiff failed to return to work minutes after he was ordered to do so and used
profanity as he was escorted out of the workplace; the plaintiff, on the other hand, stated
that only seconds had passed by as he was preparing to return to work and denied that he
used profanity.  *Id.* at 436-37.

Tuggle contends that this case is like *Hamilton* because shortly after she first
requested FMLA leave, Goodwill began "creating a paper trial" so that it could justify

13

terminating her.  (Doc. # 23 at 7).  In support, she argues that the first reprimand in her seventeen (17) year career with Goodwill occurred two weeks after she requested FMLA leave and that her second reprimand occurred a day later.  *Id.* at 7.  Tuggle "disputes the facts surrounding each reprimand" and maintains that after she requested FMLA leave, Goodwill and its employees began "concocting" complaints from customers and other co-workers.  *Id.* at 7-8.

Hamilton is inapplicable for three reasons.  First, the defendant-employer in *Hamilton* used the evidence of pretext (increased surveillance) to justify the plaintiff's termination; here, the alleged pretext (false complaints and reprimands) is wholly unrelated to Goodwill's proffered reason for termination, which was Tuggle's failure to show up for work. Second, unlike the defendant in *Hamilton*, Goodwill did not "watch[] and wait[] for [Tuggle] to make a mistake."  556 F.3d at 436.  Rather, Fryman did the opposite, notifying Tuggle before Goodwill terminated her that she had no personal leave remaining after September 22, 2011 (Doc. # 22, Ex. 15), and warning her that if she failed to abide by the leave policy it would be grounds for termination (Doc. # 22, Ex. 13).  If Goodwill was trying to entrap Tuggle so that it could fire her because of her age, it makes little sense that Goodwill would give Tuggle notice that failing to return to work would result in discharge.  Third, the plaintiff in *Hamilton* disputed the factual basis for his termination, 556 F.3d at 436-37; Tuggle, meanwhile, admits that she did not report to work when her personal leave ended (Doc. 22, Ex. 3 at 15-16).

Putting *Hamilton* aside and viewing Tuggle's allegations about the reprimands and complaints in the light most favorable to her, they do not provide sufficient evidence of pretext.  Most importantly, Goodwill does not rely on them as justification for Tuggle's

14

termination.  *See Back v. Nestle*, 694 F.3d 571, 580 (6th Cir. 2012) (holding that a plaintiff's allegation that a defendant-employer put false criticisms in his personnel file did not establish pretext because the employer did not rely on the criticisms as its legitimate reason to terminate).  In an attempt to bolster their relevance, Tuggle notes that a reprimand renders a Goodwill employee ineligible for personal leave.  (Doc. # 23 at 7).  But that is of no consequence because Goodwill granted an exception to that policy and provided Tuggle with leave from August 3, 2011 through September 22, 2011. (Doc. # 22, Exs. 5, 15, 17).  With respect to the complaints, Fryman states that the only action she took when she learned about them was to pass the information along to Schult.  (Doc. # 27 at 32).  Even if the reprimands and complaints were falsely made, that would not lead to a reasonable inference that Goodwill's proffered reason for termination is pretext for age discrimination.[10]

---

[10]   Because it is not outcome determinative, the Court accepts as true Tuggle's allegation that the reprimands and complaints were falsely made.  However, the Court notes that in Tuggle's Response she fails to substantiate her argument by citing to evidence in the record.  Fed. R. Civ. Pro. 56 (c)(1)(A) ("A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record . . . ."); *Macy v. Hopkins Cnty. Sch. Bd. Of Educ.*, 484 F.3d 357, 364 (6th Cir. 2007) (recognizing that at the summary judgment stage an ADEA plaintiff "must identify evidence from which a reasonable jury could conclude that the proffered reason is actually a pretext for unlawful discrimination").  The Court's own review of the record reveals the following:

    Tuggle was reprimanded shortly after her request for FMLA leave for twice not following her supervisor's instructions.  (Doc. # 23, Ex. 6, April 12, 2001 Reprimand).  In her deposition, she admits the factual basis for one incident; specifically, that Schult asked her to call other mangers about their schedules but that she "didn't because I didn't want to be trying to tell other mangers what to do."  (Doc. # 25 at 80).  Tuggle does dispute the other incident; namely, that she refused to give a Goodwill truck driver donations as instructed, stating that she "wasn't even at the store."  (Doc. # 25 at 88).

    With respect to the complaints, Tuggle characterizes them in her Response as "false" (Doc. # 22 at 3), but again fails to support that allegation by citing to the record.  Instead, she cites to depositions from three Goodwill employees: (1) Vicki Hunter, who states that she received complaints that Tuggle was "mean to some of the employees" (Doc. # 26 at 24-25); (2) Fryman, who states that employees complained that Tuggle was "disrespectful" (Doc. # 27 at 31); and (3) Schult, who states that he received reports from employees that Tuggle would leave for lunch at 11:00 a.m. and never return to work (Doc. # 28, 35-36).  In her deposition, Tuggle denies that she yelled at employees, (Doc. # 25 at 80), but does not admit nor deny that she would at times fail to return work after her lunch break.  Nor does she deny that these complaints were in fact made.

The record leaves no doubt that Goodwill fired Tuggle because she did not show up to work for three days after her personal leave ended. Tuggle had been previously warned that she had no personal leave remaining and that if she failed to seek approval before missing work it could result in termination. She was not medically cleared to return to work on September 22, 2011, but by her own admission she did not relay that information to anyone at Goodwill. (Doc. # 25 at 15-16). In the September 27, 2011 letter, Fryman cites Tuggle's failure to return to work as the reason Goodwill terminated her. (Doc. # 22, Ex. 18). Goodwill has not wavered from that proffered justification. *See Cicero v. Borg-Warner Auto, Inc.*, 280 F.3d 579, 592 (6th Cir. 2002) (stating that shifting justifications can create a genuine issue of fact whether a proffered reason is pretext). Based on this evidence, no reasonable jury could conclude that Goodwill's reason for termination is more likely than not pretext for age discrimination.

### D. Tuggle's state law gender discrimination claim

All that remains is Tuggle's state law gender discrimination claim.[11] (Doc. # 1 at ¶ 4). Normally, "if the federal claims are dismissed before trial . . . the state claims should be dismissed as well." *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966). However, remand is a matter of discretion, and in exercising that discretion, a "district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Landefeld v. Marion General Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993). Retention of a pendent state law

---

[11] This Court granted Goodwill's motion to dismiss Tuggle's Title VII gender discrimination claim for failure to exhaust administrative remedies (Doc. # 6), but neither party has moved for summary judgment on Tuggle's state law gender discrimination claim. (Doc. # 3). Thus, that claim remains pending.

claim is proper when a case has been pending for two years, the parties have completed discovery, and the parties have submitted dispositive motions.  *Taylor v. First America Bank-Wayne*, 973 F.2d 1284, 1288 (6th Cir. 1992).

This case is nearly identical to *Taylor*: it has been on the Court's docket for two years (Doc. # 1); discovery is complete (Doc. # 19); the Court has already ruled on a motion to dismiss (Doc. # 6); and the parties have fully briefed Goodwill's motion for summary judgment (Doc. ## 22, 23, 24).  As a result, the Court is "familiar with the facts of the case and [has] already . . . invested significant time in the litigation."  *Harper v. AutoAlliance Intern. Inc.*, 392 F.3d 195, 211 (6th Cir. 2004).  Balancing the appropriate interests, the court finds that judicial economy favors retaining jurisdiction over Tuggle's remaining state claw claim.

Having decided to retain jurisdiction, the parties are notified, pursuant to Federal Rule of Civil Procedure 56(f), that Goodwill may be entitled to summary judgment on Tuggle's state law gender discrimination claim.  Fed. R. Civ. Pro. 56(f) ("After giving notice and a reasonable time to respond, the court may: (1) grant summary judgment for a nonmovant; (2) grant summary judgment on grounds not raised by a party; or (3) consider summary judgment on its own after identifying for the parties material facts that may not be genuinely in dispute."); *see Laney v. Getty, et al.*, No. 5:12-306-DCR, 2014 WL 4230797, at *1 (E.D. Ky. Aug. 25, 2014).  Therefore, the parties will be directed to file supplemental briefs on this issue.

### III.  CONCLUSION

Accordingly, for the reasons stated herein, **IT IS ORDERED** as follows:

(1)     Defendant Goodwill Industries of Kentucky, Inc.'s Motion for Summary Judgment (Doc. # 22) is hereby **GRANTED**;

(2)     Plaintiff Vickie Tuggle's age discrimination claims in Counts I and IV are hereby **DISMISSED WITH PREJUDICE**;

(3)     Pursuant to Rule 56(f) of the Federal Rules of Civil Procedure, the parties are **NOTIFIED** that Defendant Goodwill Industries of Kentucky, Inc. may be entitled to summary judgment on Plaintiff Vickie Tuggle's Ky. Rev. Stat. Ann. § 344.040 gender discrimination claim (Count IV). The parties are therefore **DIRECTED** to file supplemental briefs regarding this issue within **twenty-one (21) days** of the entry of this Memorandum Opinion and Order. The supplemental briefs shall not exceed **five (5) pages** in length.

This 23rd day of December, 2014.



Signed By:
_David L. Bunning_   DB
United States District Judge

G:\DATA\Opinions\London\12-221 MOO SJ.wpd